# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7529 | **DATE** | 6/29/2001 |
| **CASE TITLE** | The Selway Group, Inc. vs. Globalnet International, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss [7-1] is denied. Status hearing set for 7/17/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 2 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | FILED FOR DOCKETING | docketing deputy initials | |
| | Mail AO 450 form. | 01 JUN 29 PM 3:34 | 6/29/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE SELWAY GROUP, INC., a Delaware corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 00-C-7529<br>) |
| GLOBALNET INTERNATIONAL, INC., a Nevada corporation | )<br>)<br>)<br>) |
| Defendant. | ) |

DOCKETED
JUL 0 2 2001

## MEMORANDUM OPINION & ORDER

Defendant Globalnet International, Inc. ("Globalnet") presently moves to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction arguing that the amount in controversy does not exceed $75,000 as required under 28 U.S.C. 1332. For the reasons articulated below, the court denies Globalnet's motion.

## 12(b)(1) MOTION TO DISMISS STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the sufficiency of the amount in controversy requirement of 28 U.S.C. § 1332(a). If uncontested, the courts will accept the sum of plaintiff's good faith claim unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.*, 303 U.S. 283, 289 (1938); *Target Market Pub., Inc.* v. *ADVO, Inc.*, 136 F.3d 1139, 1141 (7th Cir. 1998). However, if the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, then the party invoking jurisdiction bears the burden of supporting its jurisdictional allegations by competent proof. *McNutt* v. *General Motors Acceptance Corp. of Indiana*, 298

1

U.S. 178, 189 (1936); *NLFC, Inc.* v. *Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).[1] "Competent proof" has been interpreted to mean by a preponderance of the evidence or proof to a reasonable probability that jurisdiction exists. *Rexford Rand Corp.* v. *Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995); *Gould* v. *Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993).

To determine whether subject matter jurisdiction exists, the district court may consider, in addition to the jurisdictional allegations of the complaint, any evidence that has been submitted on the issue. *Capitol Leasing Co.* v. *F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Grafon Corp.* v. *Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979).

## FACTS

Plaintiff, The Selway Group, Inc. ("Selway"), alleges the following: On October 2, 1996, Selway and Globalnet, through its predecessor in interest, DTA Communications Network, LLC, executed a Representation Agreement which provided that Selway would furnish services for Globalnet, including the negotiation of international long distance telecommunications interconnection agreements with Mexican carriers for long distance traffic originating in the United States and terminating in Mexico and vice versa. The Representation Agreement further provided that Globalnet would pay Selway a fee of 3% of the gross revenues from such traffic. On July 9, 1997, Selway and Globalnet executed Addendum A ("the Addendum") to the Representation Agreement which provided that Globalnet would pay Selway 3% of the gross billings by Investcom, Inc. (presently named Protel, S.A. de C.V.), a Mexican carrier, for traffic

---

[1] Selway mistakenly argues that Globalnet's filing of a 12(b)(1) motion to dismiss for failure to meet the amount in controversy requirement imposes on Selway no further burden than merely good faith allegations. Selway contends that if Globalnet's motion is sufficient to change Selway's burden to the "competent proof" standard, then any defendant could simply file such a motion to force the plaintiff to demonstrate by a preponderance of the evidence that the jurisdictional minimum is met. Significantly, Selway cites no case law to support its position, and this assertion is contrary to the settled law cited above.

2

originating in the United States and terminating in Mexico and an additional $.003 per minute for such international telecommunications traffic. Selway's services have enabled Globalnet to generate substantial international long distance telecommunications traffic between the United States and Mexico.

In response to Globalnet's motion to dismiss, Selway submitted Globalnet's Securities and Exchange Commission ("SEC") form 10-Q filing for the quarter ending June 30, 2000, filed September 9, 2000. The SEC filing illuminates the following facts: Globalnet "has focused primarily on wholesaling international voice and facsimile communications services between the United States and Latin American countries, predominately [sic] Mexico." (Pl.'s Ex. A at 11.) The report also states that Globalnet's "primary source of revenue is the fees that [it] receive[s] from customers for completing calls over [its] network." (*Id.* at 18 .) Globalnet's revenues grew exponentially as compared to its figures for the first half of 1999. Revenues for the first half of 2000 were $30.8 million as compared to $4.8 million for the same time period in 1999. (*Id.* at 20.) Globalnet's growth was "primarily" due to its increased number of customers and traffic. (*Id.* at 20.)

Selway admits that Globalnet has made partial payments to Selway for such international traffic between the years of 1998-2000. However, Selway alleges that while it has performed all of its obligations under the Representation Agreement and the Addendum, Globalnet has refused and neglected to pay Selway commissions for substantial additional international long distance telecommunications traffic between the United States and Mexico. Selway claims that it cannot ascertain the precise amount of its damages because the information in Globalnet's possession. Selway seeks an accounting fully and completely disclosing Globalnet's billings and revenues for

3

international long distance telecommunication services between the United States and Mexico in order to determine the amount Globalnet owes Selway under the Representation Agreement and the Addendum. Selway alleges that the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

## DISCUSSION

Globalnet does not dispute the veracity of Selway's characterization of their agreements or the SEC Report. Rather, Globalnet argues that Selway's complaint is devoid of any showing that the amount in issue exceeds $75,000, that Selway's claim is purely speculative, and the SEC Report alone is insufficient to determine revenues from Globalnet's relationship with Mexican carriers. Specifically, Globalnet argues that Selway's call for a full and complete accounting from Globalnet of billings and revenues for long distance international telecommunication services between the United States and Mexico exposes the indefiniteness of Selway's assertion that the amount in controversy exceeds $75,000. In effect, Globalnet contends that Selway is attempting to force discovery in order to find an evidentiary basis for satisfying the jurisdictional minimum. Moreover, noting that Selway failed to submit a single affidavit and that the SEC filing alone is insufficient to establish the revenues resulting from Globalnet's relationship with Mexican carriers, Globalnet argues that Selway's submission of an SEC Report is insufficient to satisfying its burden of supporting its jurisdictional allegations with competent proof.

Selway counters that the filing shows that Globalnet grossed over $30 million in the first six months of 2000 and that the report states that Globalnet's business primarily concerns wholesaling international voice and facsimile communication services between the United States and other countries, predominantly with Mexico. Therefore, Selway contends that it is

4

reasonable to conclude that a substantial portion of Globalnet's revenues are derived from interconnection agreements with Mexican carriers, for which a commission is due to Selway according to the Representation Agreement.

To determine whether there is a reasonable probability that the amount alleged owed exceeds $75,000, the court may look at Globalnet's SEC filing submitted by Selway for an indication of gross revenues on which Selway's alleged portion is based. *See Capitol*, 999 F.2d at 191 (stating that the court may view whatever evidence that has been submitted to determine whether subject matter jurisdiction exists). The SEC Report indicates that Globalnet grossed $14,486,390 between January and March of 2000, and $30,769,522 for the period of January and June of 2000. (Pl.'s Ex. A at 25.) The filing plainly states that Globalnet "has focused primarily on wholesaling international voice and facsimile communications services between the United States and Latin American countries, *predominately [sic] Mexico*." (*Id.* at 11 (emphasis added).) Additionally, the SEC Report declares that its "primary source of revenue is the fees that [it] receive[s] from customers for completing calls over [its] network." (*Id.* at 18.) Because Globalnet revealed that most of its revenue comes from international telecommunication services and that most of that business is derived from services to and from Mexico to which a 3% commission is due to Selway, it is reasonable to infer, in light of Selway's claim that a substantial amount of commissions remain unpaid, that well over $75,000 is in controversy based solely on the six months covered by the SEC Report. The fact that Globalnet's gross revenues were only $4.9 million for the first six months of 1999 does not affect this court's conclusion, for

5

even a substantial portion of 3% of this amount appears to satisfy the jurisdictional minimum.[2]

*Target Market Pub., Inc.* v. *ADVO, Inc.*, 136 F.3d 1139, 1141-2 (7th Cir. 1998), cited in support by Globalnet, is distinguishable. In *Target*, a case before the court on a motion for summary judgment, the plaintiff charged breach of contract and breach of fiduciary duty, and relied primarily on an expert report that concluded that if defendant had performed its obligations plaintiff would have earned over $1 million to support its jurisdictional amount. *Id.* at 1141-42. The court found that the report's projections were based on assumptions that did not legitimately support its conclusion. *Id.* at 1144. The report assumed that the business would have been profitable and expanded to many other markets, when in reality, at the time defendant ceased its performance of the contract, the business was floundering. *Id.* Whereas the plaintiff in *Target* could not establish after discovery that its business venture with the defendant would have generated enough money to satisfy the amount in controversy requirement, here, Selway has established for purposes of defending a motion to dismiss under Rule 12(b)(1) that Globalnet is receiving several millions of dollars a month from services to which a commission is allegedly owed to Selway. Selway is basing its allegations on an SEC Report, which Globalnet itself filed, as opposed to an erroneous and speculative expert report.

Likewise, in *Wheelon* v. *Allied Products Corp.*, also cited by Globalnet, the plaintiffs alleged that pursuant to an agreement entered into in 1956, they were entitled to a 1% commission for every Wheelon press the defendant sold. 929 F. Supp. 316, 317 (N.D. Ill. 1996). Since 1986, however, the plaintiffs had not received any commissions. *Id.* The court found that

---

[2]Although Selway bears the burden of proof, the court notes that Globalnet failed to submit any evidence that casts doubt on Selway's allegations, such as indicating (a) what portion of its gross revenues derived from Mexico or (b) what it has paid to Selway.

6

the plaintiffs had not established by a preponderance of the evidence that the amount in controversy exceeded the jurisdictional minimum because since 1986 the defendant had only sold one Wheelon press which entitled plaintiff to just $25,000. *Id.* at 318. While it was possible that the defendant could sell more Wheelon presses in the future, the court considered that it had sold none in approximately the last 10 years, no potential customers had approached the defendant, the Wheelon press was outdated, and the defendant had no plans to improve the Wheelon press to increase its marketability. *Id.* Therefore, the court concluded that it was not reasonably probable that the plaintiff's rights under the agreement would ever exceed the jurisdictional minimum. *Id.* Here, in contrast, Globalnet has presented no facts to rebut or discredit Selway's evidence that Globalnet is a rapidly expanding enterprise. When this is complemented with Selway's allegation that a substantial amount of its commissions remain unpaid, the court finds it reasonably probable that more than $75,000 is in controversy and concludes that this court has jurisdiction over the subject matter of Selway's complaint.

## CONCLUSION

For the above-stated reasons, the defendant's motion to dismiss is denied.

Date: June 29, 2001        Enter: _____
                                   JOAN HUMPHREY LEFKOW
                                   United States District Judge